**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4-6-16

LEONIDAS DELPILAR,                              :

                  **Plaintiff,**     :       **MEMORANDUM OPINION**
                           :       **AND ORDER**

           **- against -**      :

                           :       **15-CV-0459 (RLE)**

FOODFEST DEPOT, LLC, et al.,                   :

                **Defendants.**    :

**RONALD L. ELLIS, United States Magistrate Judge:**

## I.  INTRODUCTION

The Court held a pre-motion conference in the above-captioned on March 2, 2016, to discuss Plaintiff Leonidas Delpilar's ("Delpilar") contemplated motion to enforce a settlement agreement reached between the parties. Defendants failed to appear at the conference in person. When reached by telephone, Kenneth McCallion ("McCallion"), counsel for Defendants, stated that he was unaware that a conference had been scheduled. McCallion also represented that he was unaware that at a mediation session on January 11, 2016, prior defense counsel had signed a writing assenting to the material terms of a settlement agreement. On March 11, 2016, McCallion was ordered to show cause why he should not be sanctioned for (1) failing to appear at the March 2, 2016 conference; and (2) failing to be aware of material facts relevant to the issues raised by Plaintiff concerning the settlement of the case. On March 15, 2016, McCallion filed a Declaration in response to the order, as well as Declarations from Susan Hynes, the Executive Director of McCallion's law firm; and Defendant Konstantinos Tyras ("Tyras"). (Doc. No. 60.) On March 16, 2016, he filed a letter from Dr. Joy Gelbman. (Doc. No. 61.) For the reasons that follow, the Court finds that sanctions against McCallion are not warranted.

## II.    BACKGROUND

Plaintiff Leonidas Delpilar ("Delpilar") commenced this action on January 21, 2015,

bringing claims against Defendants Foodfest Depot, LLC ("Foodfest"), Michael Tyras, and

Gustavo Tyras[1] (collectively, "Defendants"), pursuant to the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 *et seq.* On January 11, 2016, the Parties participated in a court-

ordered mediation and on January 14, 2016, the Mediator reported to the Clerk that an

"agreement was reached on all issues." (Doc. No. 51.) That same day, the Parties consented to

the jurisdiction of the undersigned for all purposes, pursuant to 28 U.S.C. § 636(c) and Federal

Rule of Civil Procedure 73. (Doc. No. 49.) The Court ordered the Parties to submit, by February

15, 2016, the settlement agreement and a memorandum detailing why the settlement is fair and

reasonable, pursuant to its duty to review the agreement under *Cheeks v. Freeport Pancake

House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).

On February 5, 2016, Delpilar filed a pre-motion letter seeking enforcement of the

settlement agreement that was reached during the January 11, 2016 mediation. (Doc. No. 52

("February 5 letter").) Delpilar states that when his counsel's office sought to formalize the

agreement reached at the mediation, Defense counsel Steven Beard ("Beard") told Plaintiff's

counsel that "his clients were reneging on the settlement and that Mr. Beard's office would be

substituted by new counsel." (*Id.*) The letter further states that *"[t]here was a written settlement

agreement signed by all parties at the mediation."* (*Id.* (emphasis added).) By minute entry on

February 8, 2016, the Court ordered Defendants to respond to Delpilar's letter by February 16,

2016.

---

[1] The Complaint incorrectly uses the name "Gustavo Tyras" for Defendant Konstantinos Tyras. (*See* Doc. No. 57.)

On February 16, 2016, Beard filed a Notice of Substitution of Attorney, naming

McCallion & Associates LLP as the substituted attorneys of record for Defendants. Defendants

did not respond to the February 5 letter until February 24, 2016. (Doc. No. 54.) In the response.

McCallion stated that "[p]rior to being substituted in as counsel, [he] had conversations with

both" Beard and Defendants. (*Id.*) He continued:

> In none of these conversations was I advised that any final
> settlement agreement had been entered into on behalf of the
> defendants. Indeed, it was my clear impression that the defendants
> believed that, while there was a settlement proposal "on the table,"
> they were free to either proceed with the settlement or not.
> Defendants further advised that, upon further reflection and
> review, they did not wish to proceed with the proposed settlement
> and that they wanted new counsel to represent them in their
> defense of the case. Defendants, therefore, take the position that
> there is no binding settlement agreement and that the litigation
> should move forward.

(*Id.*) Approximately an hour after filing the letter, McCallion entered a notice of appearance on

behalf of Defendants. (Doc. No. 55.) On February 26, 2016, the Court scheduled a status

conference for March 2, 2016.

Defendants failed to appear at the March 2, 2016 conference. When reached by

telephone, McCallion stated that he had not received the electronic notice that the conference had

been scheduled and, in any event, was just finishing an appointment with his cardiologist. When

questioned about the written term sheet, McCallion stated that he was unaware that any writing

was signed at the mediation. Plaintiff's counsel, Steven Blau ("Blau") produced a copy of the

writing at the conference, which the Court reviewed *in camera* and ordered be produced to

McCallion. The term sheet contains six paragraphs that set forth, with specificity, the material

terms of the agreement, including: (1) the total amount of the settlement; (2) the amount and

specific schedule for six installment payments; (3) how the settlement would be apportioned for

the purposes of Plaintiff's taxes; (4) terms relating to confessions of judgment in the event of default; and (5) an agreement that Plaintiff's counsel would hold Defendants' post-dated checks in escrow for the duration of the installment period.

On March 7, 2016, McCallion filed a letter indicating that he had received the term sheet. He alleged that his client, Konstantinos Tyras, had been present at the mediation session but left before the end, and was "unaware that the basic financial terms of the settlement had been agreed to by his former counsel and reduced to writing." (Doc. No. 57.) However, Tyras had authorized his former counsel to enter into the agreement and "concede[d] that [Defendants] are bound by the financial terms of the settlement," at least with respect to the installment payment term and amount. (*Id.*) Defendants contest the term that requires the individual Defendants to sign personal confessions of judgment, and claim that this term was not discussed with Tyras before he left the mediation session. (*Id.*) Defendants, however, were negotiating the remaining terms of the settlement agreement in good faith. (*Id.*)

On March 11, 2016, the Court ordered McCallion to show cause why he should not be sanctioned for failing to appear at the March 2, 2016 conference and for failing to be aware of material facts relevant to Plaintiff's motion for enforcement of the settlement agreement. (Doc. No. 59.) McCallion submitted a declaration from himself, as well as from his firm's Executive Director, Susan Hynes ("Hynes"); his client Defendant Konstantinos Tyras; and a letter from his cardiologist, Dr. Joy Gelbman. (Doc. Nos. 60, 61.) McCallion states that he failed to attend the March 2, 2016 conference because (1) on February 25, 2016, his "computer malfunctioned" and he was unable to receive any email; (2) he relied on Hynes to monitor his cases from her computer for two weeks, and this case "was not on her list of cases as of February 26, 2016" and she was therefore unaware of the notice; and, in any event, (3) McCallion had a scheduled

4

appointment with his cardiologist during the March 2 conference, and had he known of the conference, "the case would necessarily have been delayed since [he] would have had to ask the Court for an adjournment in view of the fact that it was critically important that [he] keep [his] medical appointment with [his] cardiologist on that date." (Doc. No. 60 at ¶¶ 9-12.)

Explaining why he was unaware that a written term sheet had been signed by prior counsel, McCallion stated that, prior to his substitution as defense counsel, he "reviewed the case docket and discussed the case by phone with Steven Beard." (*Id.* at ¶ 6.) He states that Beard did not inform him that he had signed a term sheet at the mediation, but only that Tyras did not wish to settle the matter and intended to take the case to trial. (*Id.*) Moreover, although Tyras advised him that a mediation session had occurred, and that he had left prior to the conclusion of that session, Tyras's understanding was that "although certain financial settlement terms were discussed," "no settlement agreement had been finalized." (*Id.* at ¶ 4.) Beard failed to provide either his client or McCallion with a copy of the signed term sheet. (*Id.* at ¶ 20.)

McCallion also states that when he spoke to Beard after the March 2 conference, "Beard pointed out to [him] that [] [D]efendants could take the position that the Term Sheet was not a binding settlement document for at least two reasons:" (1) that the number of days in which Defendants were allowed to cure a breach remained open to negotiation, and (2) any private settlement between the Parties would require Court approval pursuant to *Cheeks v. Freeport Pancake House, Inc.*, No. 14-299, at *18 (2d. Cir. Aug. 7, 2015). (Doc. No. 60 at ¶ 14.) Beard also suggested that McCallion conduct "further research" on what constitutes a binding settlement agreement, and whether Defendants "could legally be considered to be bound to the financial terms set forth in the Term Sheet." (*Id.* at ¶ 15.)

## III. DISCUSSION

### A.      The Standard

The Court may impose sanctions against counsel pursuant to 28 U.S.C. § 1927 ("§ 1927") and against a party and counsel pursuant to the Court's inherent authority to manage the cases before it. *See Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000); *Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005); *accord Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (holding that a court's inherent power to sanction is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve orderly and expeditious disposition of cases").

Under § 1927, any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Bad faith is the touchstone of an award under this statute." *Revson*, 221 F.3d at 79. "Like an award made pursuant to the court's inherent power, and award under § 1927 is proper when the attorney's action are so completely without merit as to require the conclusion that they have been undertaken for some improper purpose such as delay." *Id.* (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)).

"Due process requires that courts provide notice and opportunity to be heard before imposing any kind of sanctions." *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999). The "notice requirement mandates that the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense." *Id.*; *accord Sakon v. Andreo*, 119 F.3d 109, 114 (2d

Cir. 1997).  An evidentiary hearing is not required.  *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 117 (2d Cir. 2000).  "The opportunity to respond by brief or oral argument may suffice." *Id.*

### 1.    Notice and Opportunity

The Court gave McCallion the opportunity to Show Cause why he should not be sanctioned on March 11, 2016. (Doc. No. 59.) McCallion filed responses on March 15, 2016, and March 16, 2016. (Doc. Nos. 60, 61.) McCallion had sufficient notice of the basis for sanctions and an opportunity to be heard so as to satisfy the requirements of due process.

### 2.    Sanctions

Having reviewed McCallion's submissions, the Court finds that sanctions against McCallion are not appropriate under § 1927. McCallion reasonably relied upon the information provided to him by his client, Tyras, and his client's former counsel, Beard, who apparently failed to tell either his client or substituted counsel that he had signed a term sheet at the conclusion of the mediation session. McCallion's review of the docket may have suggested that further inquiry into the matter was necessary.  For instance, the Final Report of the Mediator, posted on the docket on January 22, 2016, indicates that "agreement was reached on all issues" (Doc. No. 51.). However, the Court finds that McCallion's "position that there [was] no binding settlement agreement" was not taken unreasonably or in bad faith in light of Beard's representations and material omissions. Moreover, although Delpilar's February 5 letter stated that "[t]here was a written settlement agreement signed by all parties at the mediation," the letter also stated that counsel forwarded "a draft form settlement agreement" to Beard after the mediation, which could also reasonably suggest that settlement was not reached at the mediation. (Doc. No. 52.) The Court also notes that Plaintiff's counsel, Blau, did not attach the written term

7

sheet to the letter, which would affirmatively have put McCallion on notice of its existence and substance.

The Court finds that the actions of Beard before and after McCallion was substituted as counsel, while not properly before the Court at this time, materially contributed to any acts or omissions of McCallion that resulted in the delay of the resolution of this case. Blau, as well, could have contributed to a more timely resolution by affirmatively contacting McCallion when he was substituted as counsel and apprising him directly of the existence of the written term sheet, or attaching it to the February 5 letter. Because McCallion was supplied with incomplete information when he entered the case, an award of sanctions against him is not justified.

Turning briefly to McCallion's excuses for failing to appear in person at the March 2, 2016 telephone conference, the Court finds that this failure was also not in bad faith and that sanctions are therefore not warranted.

## IV. CONCLUSION

Because McCallion has demonstrated that he did not act in bad faith when he (1) failed to appear at the March 2, 2016 conference; and (2) was unaware of the existence of a term sheet signed at the conclusion of Parties' mediation session, the Court finds that sanctions against him are not warranted at this time.


**SO ORDERED this 6th day of April 2016**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**